Dessart, Ms. Weill Good morning, your honors. May it please the court. There are three main reasons why the case against Mr. Dessart should be reversed and remanded. Could you raise your voice some? Difficult to hear. There are wonderful ventilation fans creating. No, don't move the mic. Just raise your voice. Okay, your honor. Thank you. The first reason why this case should be remanded back to the district court is because the district court should have ordered a Frank's hearing. There were misleading, false statements in the affidavit supporting the search warrant, and without those, there would not have been probable cause. Why wasn't the statement on his publicly available website that he had HGH for sale itself, all by itself, enough to create probable cause? The sale of HGH FRAG, which was what was on the website, which actually isn't HGH itself, but even if it was, the website said that it was selling its products not for human use, but for research purposes only, and under those conditions... Put to one side the transparently bogus nature. Researchers do not buy retail quantities of HGH on fly-by-night websites, but why isn't the statement, I am offering HGH for sale, enough for probable cause? And then if he wants to show the people who have arrived to do the search, this is a legitimate research operation, that's fine. Probable cause is not the same thing as proof beyond a reasonable doubt. My question stands. Why isn't his own statement, available to the public, enough to justify a search? Because there was no evidence of a crime under those circumstances. Because the government never laid any record that what the website said should have been or could have been considered bogus. All there was was... It's transparently bogus. This ties up to your argument that the jury couldn't possibly have believed enough to find him guilty. Correct, Your Honor. It's that people have to be credulous. I don't know why magistrates or anybody else needs to be credulous. But it's the government has to establish that there was probable cause. And when you take out the HGH and if you explain in the affidavit or allow the magistrate court to understand that HGH for sale in and of itself, especially under the website, is not a crime. There isn't evidence in the affidavit to support... But didn't the website direct the viewer to another website where he could buy the stuff? No, I don't believe so, Your Honor. What was the chain that ended with his offering retail sales? At the point of the search warrant, the chain was that the FDA agent went to the website and reviewed it. According to the affidavit, he received the information that a website existed from an anonymous tip. That is what the chain was at the time that the search warrant was requested. But didn't the website direct you to a site at which you could actually place orders? Well, the website, you could place your orders at the website. Pardon? The orders could be placed at the EDS research website. Right, by adding their items to a shopping cart. Correct. So does that sound like research? Wasn't that inconsistent with the characterization of this stuff as research? None of that was in the record at the time that the search warrant was being requested. There were statements about testing and how long that would take. There was the allegation that the packages contained HGH. And there were allegations that DSART was selling generic forms of medications that are traditionally prescribed to cure conditions in humans. Specifically, according to the affidavit, it was generic Cialis and Viagra. However, those statements were not true. And that's why there should have been a Franks hearing to make the government show its cards and explain why what was not true. Not true, the statement with respect to how long the HGH testing for the suspicious packages would have taken. The affidavit said six weeks, which six weeks would have compromised, according to the FDA. Yeah, that's just not material. You can take that completely out of the equation and still have ample probable cause. Except that when you take out the six weeks, all you're left with is a bald, unsupported, completely conclusory statement that any wait would have compromised the ability to... It doesn't matter. There's ample probable cause here. They intercept these shipments of a substance that is packaged and appears to be HGH inbound from China for an address in the small town of Reidsville in Wisconsin that's running this internet site for purchase of all of this stuff, not just HGH, but other knockoff pharmaceuticals. Why isn't that enough standing alone? And then representing itself to be for research only, which is, as has been suggested, implausible on its face. Because just buying HGH, even from China, was not a crime. But it didn't stop there, obviously. At the time of the controlled delivery of the packages, it did. No, he was selling it on this website. No, he was selling HGH frag, which is not the same as HGH. So even if it is considered bogus that it was for research purposes only, it's not the same chemical. And the other allegations that he was selling generic forms of Viagra and Cialis, that was also made in the affidavit, but that was also misleading and not true. First of all, the statement that he was selling generic forms of Cialis and Viagra was not on the website at all. On the website, Cialis and Viagra were not mentioned at all. What was for sale was a series of chemicals. But weren't they the active ingredients in drugs like Viagra? Correct, Your Honor. They were. That does not, however, make them generic forms of Cialis and Viagra under the Food, Drug, and Cosmetic Act or otherwise. What are you saying? You can't sell the drug, but you can sell the ingredients that make it effective? Correct, Your Honor. Even when the ingredients are patented? Correct, Your Honor. Under the FDCA, there's very specific definitions of what is a drug for purposes of being regulated. We use the term drug much more broadly in our daily lives. But for purposes of this act, it has to be a chemical, as the government attempted to argue throughout this case, that it has to be sold for the... No, it doesn't. It doesn't have to be a pill. Look, pills usually have an active ingredient and then a lot of inactive stuff, just to make it big enough, you know, so you know what you're doing, right? And you think that by taking out the inactive materials and just selling the active ingredient, that somehow is lawful when selling the entire drug, wouldn't be? Is that what you're saying? That would be preposterous, wouldn't it? If selling it doesn't fit under the definition of drug in the FDCA... Oh, come on. Hey, this statute... That's absurd. This statute requires... So if you chip off a little piece of the pill or something like that, then you can sell anything? Is that what you're saying? If it's not for human use, you can. The slightest alteration of the pill and it's no longer a drug? If you're not selling it for human use, it is. Can the law be as absurd as you are suggesting with your smile? Yes, the FDCA requires a fine-tooth comb here. It is very exact. And the definition of drug for something to be regulated requires that it be sold for human use. And the government did not establish at the time that the search warrant was being sought that he was selling for human use. And that's based on your claim about this research-only disclaimer, if I'm understanding your argument correctly. Yes, Your Honor. At the time the search warrant was requested, all that was presented was the website on its face. Suppose the website had said, this is the active ingredient in Viagra. We are selling it exclusively for use in cattle. Would that have exempted it from the drug laws? No, that actually would have put it right under the drug laws. Because using... You just told me that the definition of a regulated drug is something sold for human use. It's human and animal use, Your Honor. So, for research purposes, not a drug. We are selling the active ingredient in Viagra exclusively for high school students who want to perform chemistry experiments to see if it can be made into bricks. That is not under the FDCA, and that is perfectly legal. Yeah, so people must be credulous. If you put in a completely ridiculous limitation that no one will pay any attention to, it is legally required. The FDA and the courts must legally close their eyes to what's going on. That doesn't seem very plausible. No, but the government has to prove that there is evidence of a crime being committed. And in this case, it did not. And unless any of Your Honors has additional questions, I'd like to leave my time for rebuttal. Okay, that's fine. Thank you, Ms. Royal. Mr. Narver? Good morning. May it please the Court, Clint Narver on behalf of the United States. I'd like to begin by addressing the issue of the evidence of the defendant's intent to defraud or mislead. The jury convicted the defendant of 23 violations of the Food, Drug, and Cosmetic Act, specifically finding that he intended to defraud or mislead the FDA with respect to those violations. The evidence is sufficient to support the jury's finding. I'd like to explain why that is. Initially, there's some discussion in the briefs about sort of the legal lens through which to view intent to defraud or mislead, what type of evidence constitutes intent to defraud or mislead. And I think that the government and the defendant agree on what the standard is there. The cases explain that the defendant must have knowledge of the essential nature of the alleged fraud in order for the defendant to act with the requisite mens rea. Put slightly differently, as some courts put it, there must be a nexus, a connection between the defendant's intent on the one hand and the substantive violation of the act. That standard was satisfied in this case. The evidence at trial demonstrated that the defendant had a scheme. It was a scheme to manufacture and sell unapproved prescription drugs by falsely representing that these drugs were research chemicals. The reason the defendant represents these drugs as research chemicals, that is the heart of the intent to defraud or mislead here. The reason the defendant does that is because of how the act defines the term drug. It doesn't define the term drug by reference to an article's chemical composition, physical properties. There's not a list of items that are drugs. It's defined by reference to an article's intended use. The statute specifically says that an article intended to affect the structure or function of the human body is a drug. That is why the defendant falsely portrayed his drugs as research chemicals. Because if, in theory, one truly intends for these articles to be used only by researchers in some sort of laboratory where they're studying chemical reactions, then, in theory, the article does not fit within the drug definition. A consequence of that is that it is not regulated by the FDA. This activity of manufacturing and selling unapproved prescription drugs could go on essentially without any government regulation whatsoever. Why isn't research an intended use? Why isn't research an intended use? I don't think it... Intended use, under the statute, refers to... intended to do one of the things that makes it a drug. So if it's intended to affect the structure or function of the human body, if it's intended to treat or cure disease, that makes it a drug. Exactly, which is why you need the FDA's approval to use drugs in research. That's Judge Paul's next question. If the research is chemical research, we want to see whether this combines with mercury and produces some new substance. That's outside the scope of regulation. But if the research is to introduce it into a human body, in a perfectly done double-blind trial conducted by the biggest university hospital, that's covered by the Act. And it's a big puzzle why you're assuming otherwise. Because the evidence in the case demonstrates that it's not a statement, research use only and that's it. The defendant goes on to state on his website, not for human consumption. And that's what research means here in this case. That's what the defendant means, research use only. He means not for human consumption. So it was his claim at trial that by research he meant to see what effect it would have if it were put in a bowl with rust, whether there would be a chemical combination, and if so, how much heat would be released. He didn't make that statement at trial, no. But it wasn't presented in that way. Normally when one thinks of a drug being used in research, one thinks of it being used in clinical trials. Absolutely. And that's clearly covered by the Food and Drug Act. That's correct, Your Honor, it is. It is covered. But the context here is that he is saying research use only, not for human consumption. He's suggesting that it's for some sort of research that is not clinical trials, that does not involve human beings. Right, and that's your misbranding counts, right? That is correct. And it was my understanding that the evidence established that he was actually selling this to bodybuilders in the Fox Valley. That's right. And so that's how we see his true intended use, is by how he is – it's by a few things. But one of them is who is he selling this product to? Who is he promoting it to? He's promoting it to bodybuilders. The bodybuilding website is called anabolicboard.com, discoverbodybuilding.com. It's also what he's selling. He's not selling some broad array of research chemicals. He's selling a highly specific suite of prescription drugs that just so happen to match up perfectly with the interests of the bodybuilders he's selling to. He's also flavoring the products, flavors like root beer, watermelon, passion fruit. And he's also adding artificial colors to the products. So that demonstrates to us, and the jury found based on that evidence, that his intended use was that these were drugs. And that makes the claim, research use only, a false claim. And that's the linchpin of his intent to defraud or mislead. Right, an intentionally false claim because he's trying to avoid FDA scrutiny. That's correct. And we get to that, too, Your Honor, by looking at the defendant's knowledge of the fact that his activities are regulated. The defendant discusses on his website, he references the Food, Drug, and Cosmetic Act by name. He references drugs specifically. He even cites the statutory provisions. He even references misbranding, which is the very legal violation that he was charged with committing. So the defendant knows the products he's making are drugs. He knows that his drug making and selling is regulated by the FDA. And in light of that, he falsely portrays his drugs as research chemicals. It's a direct attack on the FDA's regulatory authority because it goes to the one statute that really defines that authority by defining drug, the product that's regulated by the agency. I'd like to briefly address, there are a number of cases cited by the defendant that discuss evidence of intent of fraud or mislead. And the defendant argues that in those cases there was more deceptive conduct, acts of concealment, that sort of thing, which is not present here. All of those cases are distinguishable factually from this scheme because when you look at the facts of those cases, the defendants were essentially embracing the illegality of their schemes and going completely underground, hiding every aspect of the scheme and their business from the government. The scheme here was more sophisticated. The defendant hid in plain sight, essentially. He employed a chameleon-like scheme that portrayed itself as one thing to the federal government, to the federal regulator, and it was another thing entirely to his intended customer. And when you're hiding in plain sight like that, you don't do things like use a fake name, wear a disguise, move from state to state to hide from the cops. You just don't do it because that will actually undermine the scheme by drawing unnecessary attention to you. So I don't think that those cases speak to the fraud alleged here. I'd like to also briefly address the issue of the search warrant affidavit. There was no basis for a Franks hearing, and I think that the panel has pointed out why that is. It's because in order to be entitled to such a hearing, the defendant needs to make a substantial preliminary showing that there is a false statement in the affidavit, that it is made recklessly or intentionally, and that it's material to the finding of probable cause. And here, even if you assume those first two elements are satisfied, it was not material. The alleged misstatement is the agent's statement that testing of the suspected human growth hormone would take approximately six weeks. As a matter of fact, on one occasion it took four weeks, and on another it took three. You can tell that that is not a material difference by removing the six-week statement, plugging in the defendant's suggested language, and you look at the new affidavit. And it does not change the existence of probable cause to believe evidence of a crime will be found at that residence. The defendant, I believe for the first time in their reply brief, points to this other language, the agent's characterization of products on the website as generic versions of drugs, and says that that is a false statement. It's not. It's a fair characterization of what the defendant was selling. The website said Sildenafil and Tadalafil. Those are the active ingredients in the FDA-approved drugs Viagra and Cialis. It's analogous to going into a pharmacy to look for a pain relief medication, seeing the drug Advil on the shelf, and next to it a bunch of bottles that say ibuprofen. Ibuprofen is the active ingredient in Advil, and referring to these bottles that say ibuprofen as the generic version of Advil is not misleading. It's not false. It's just a different way of characterizing the same thing. Separately, the defendant argues that the search warrant affidavit in and of itself did not establish probable cause. That argument should be rejected as well. At this point, there are a total of three judges that have looked at that search warrant affidavit, the issuing magistrate, the reviewing magistrate, and the district court judge, and they've all concluded that it does establish probable cause. And they got it right. You know, you don't have to look too hard at the affidavit to find that it establishes probable cause. In particular, if you look at the two packages of white powder in vials coming in from China, both going to the same individual at the same address, Special Agent Cagnone with FDA's Office of Criminal Investigations is provided with these packages from Customs, and based on his experience investigating crimes involving human growth hormone, he has reason to believe that that's what this is. It's also in an amount that is inconsistent with mere personal use. A hundred vials in the first package, 250 in the second. The agent says in his affidavit that that is approximately 7,000 dosage units. So it's consistent with possession for purposes of further distribution, which is what that particular provision of the Food, Drug, and Cosmetic Act criminalizes. You take that piece, and then you also take the piece of the website. The agent goes to the website, sees it's associated with the same individual, the defendant, and sees that it's selling HGH. This issue of there's a difference between HGH and HGH FRAG, I don't believe there's anything in the record that supports that notion. What the website said, the words that it used, are HGH. The agent sees that. So there's a connection. The agent also sees that there are prescription drugs, unapproved prescription drugs, being offered for sale on the website. The next piece that just really is sort of the nail in the coffin, I think, is the agent goes to the Department of Financial Institutions in Wisconsin and sees that the company, EDS Research Supplies, is registered with the state of Wisconsin, and that it's registered to the same individual, the defendant, and that the address associated with it is the Reedsville address, the very same address where these packages from China are addressed to. So with all of that, there is probable cause. Lastly, I'd like to just briefly address the issue of the prescription drug jury instruction, the third issue raised by the defendant. The district court got that instruction right. And in brief, as is discussed in the government's brief, the prescription drug can be such in one of two ways, by virtue of being approved by the FDA as a prescription drug or by virtue of having characteristics that render it a prescription drug, such as it is toxic or potentially harmful and therefore should only be used under a doctor's supervision.  The evidence went on to further demonstrate that the defendant's products, none of them, were approved by the FDA. That makes the other theory of prescription drug, which is the theory that the defendant wanted included in the jury instructions, it makes that theory of prescription drug clearly inapplicable   and therefore should only be used under a doctor's supervision. The other statutory provision the defendant wanted included in the instruction has nothing to do with the misbranding allegations at issue here. It's part of something called the 21 U.S.C. Section 379G. It's a part of something called the Prescription Drug User Fee Act, which is essentially a tax on drug manufacturers who get their products approved by the agency.  and it does define the term prescription drug. But the statute says expressly that it's for purposes of that subpart only. It's solely a definition for purposes of assessing this tax. And again, it has had no bearing here. So unless the court has any other questions, the government respectfully asks that this court affirm as to all aspects. Thank you. Okay, thank you, Mr. Narver. Ms. Wild? How much time does she have? Two minutes? To quickly touch on, first, just one of the statements that the government argued, and that was with respect to HGH not being the same thing as HGH-FRAG. The district court was informed of the difference with respect to that, and we included that on page 69 of our separately bound appendix. The majority of the government's argument, however, was based on the sufficiency of the evidence. As I said in my opening, the FDCA requires that judges and lawyers  be informed of the difference. That's because there are subtle distinctions within this act. One is very important with respect to the sufficiency of the evidence, and that is that for a felony conviction under Section 333A2, it's not enough to prove a violation. It's not enough to prove a knowing violation. Courts have held that it's not even enough to prove a violation, a knowing violation, with the purpose of evading the eyes of the FDA. What the government needed to prove, beyond a reasonable doubt, was that there was a knowing violation of Section 331 committed with the purpose to mislead or defraud the FDA, such purpose being specifically connected to the specific subsection of which the defendant was convicted. That did not happen here. With respect to the specific subsections, the evidence presented by the government may suggest a general scheme. However, it does not specifically connect to the three subsections under which he was convicted. Thank you. Thank you, Ms. Wildman. You were appointed, were you not? I was, Your Honor.